**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
JOEL A. PISANO
JUDGE

USPO & COURTHOUSE
1 FEDERAL SQUARE, ROOM 417
P.O. BOX 999
NEWARK, NJ 07101-0999
(973) 645-3136

March 21, 2005                                                                                           CLOSED

**LETTER ORDER**
<u>**ORIGINAL TO BE FILED WITH THE CLERK OF THE COURT**</u>

**Re:   David B. Shaev v. Lawrence Saper, et al.**
         **Civil Action No. 01-3744**

Dear Parties:

      On December 6, 2000, Plaintiff brought this stockholder derivative action against Datascope Corp. and its board of directors in New York Supreme Court before filing his Complaint in this Court on August 7, 2001.  Plaintiff claimed 1) that Datascope's proxy statements for the years 2000 through 2003 violated Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), 2) that Datascope overcompensated its Chief Executive Officer ("CEO") and failed to comply with its By-Laws, and 3) that the board of directors breached their fiduciary duties.  Since then the parties have made various motions, entered amended pleadings, exchanged discovery, and engaged in settlement negotiations; the specifics of which need not be recounted.  The parties reached a settlement and received the Court's preliminary approval on December 27, 2004.  The parties now come before the Court for approval of the proposed settlement agreement and Plaintiff requests the payment of fees and expenses.

**I. Settlement Agreement**

      In exchange for the dismissal of Plaintiff's claims and a complete release therefrom, the Defendants agree to restructure the CEO's Supplemental Executive Retirement Plan, which will give the stockholders an additional $500,000 in equity and reduce the company's liability by an equal amount.  Additionally, the individual Defendants will provide the company with $925,000 in cash and the termination of all prior bonus plans will garner the company $2,265,000.  A further restructuring of the yearly bonus plan will limit future bonuses for the CEO.  The total value of this settlement for the company is $3,690,000.

      A court asked to accept a proposed settlement agreement must find "that the settlement is fair, reasonable, and adequate." *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 588 (3d Cir. 1999). When making such a determination a court should consider:

      (1)    the complexity, expense and likely duration of the litigation;

  (2)  the reaction of the class to the settlement;
  (3)  the stage of the proceedings and the amount of discovery completed;
  (4)  the risks of establishing liability;
  (5)  the risks of establishing damages;
  (6)  the risks of maintaining the class action through the trial;
  (7)  the ability of the defendants to withstand a greater judgment;
  (8)  the range of reasonableness of the settlement fund in light of the best possible recovery;
  (9)  the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsch v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975) (quotation omitted); *see Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (acknowledging use of the *Girsch* factors in stockholder derivative actions).

  Applying the *Girsch* factors to the case at hand, the Court makes the following findings:

1) The first factor "is intended to capture the probable costs, on both time and money, of continued litigation." *In re Lucent Technologies, Inc., Securities Litigation*, 307 F. Supp. 2d 633, 642 (D.N.J. 2004) (quotation omitted). The litigation began more than three years ago and the parties have already expended a great deal of time and energy. Nonetheless, the parties anticipate that if the litigation were to proceed there would be more discovery, numerous pre-trial motions, an extensive trial followed by post-trial motions and an appeal. Such circumstances could extend the litigation another few years, a factor that weighs in favor of approval.

2) The second factor "attempts to gauge whether members of the class support the settlement." *Id.* at 643 (quotation omitted). Notices of the settlement were sent to all stockholders and none filed an objection, a factor that weighs in favor of approval.

3) Next, "[p]arties should have an 'adequate appreciation' of the merits in settling a case." *Id.* at 644 (quotation omitted). The litigation, though already protracted, is still in the pre-trial stage. Nonetheless, the parties have engaged in extensive discovery. Plaintiff has deposed a majority of Datascope's board of directors, Datascope's chief financial officer and secretary, Datascope's compensation consultant, and Datascope's outside counsel. Also, Plaintiff has received more than 2,000 pages in discovery materials from Defendants and other relevant witnesses. It is evident the parties had a full appreciation of the merits during negotiations. This factor weighs in favor of approval.

4) In considering the fourth and fifth factors, a court should "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." *Id.* (quotation omitted). The parties concede that the outcome of the litigation is not certain. Plaintiff

       would have to succeed in his motion to amend the complaint for a second time, which Defendants oppose. Plaintiff then would bear the burden of proving his claims. More specifically, he would have to prove that there were material misrepresentations or omissions in the annual proxy statements that were the direct cause of Plaintiff's injury. Plaintiff would also have to prove the CEO was overcompensated and that the board of directors, who are normally given deference by the courts in compensation matters, violated their fiduciary duties in awarding the CEO. Defendants suggest Plaintiff could not prevail on these claims and the parties would also dispute the damages that would arise. The parties would rely primarily on the testimony of experts and it is uncertain how a jury would weigh such opinions. The risks of establishing liability and damages weigh in favor of approval.

5)     The primary risk in maintaining a derivative action "is that the Special Litigation Committee might choose to reject the case, thereby potentially putting an end to it." *In re Cendant Corp., Derivative Action Litigation*, 232 F. Supp. 2d 327, 335 (D.N.J. 2002). There is little risk the derivative action could end because Defendants have not established a Special Litigation Committee, which could object to the settlement and stop the litigation. Rather, Defendants have agreed to the settlement and no stockholders have objected, both of which weigh in favor of approval.

6)     The seventh factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *Id.* at 336 (quotation omitted). Though Defendants could possibly withstand a greater judgment, the request for a greater judgment would make Plaintiff's case more difficult and less likely to be settled. As a result, this factor does not weigh against or in favor of approval.

7)     Finally, for the eighth and ninth factors a court should consider how "the present value of the damages the plaintiffs would likely recover if successful, appropriately discounted for the risks of not prevailing, . . . compare[] with the amount of the proposed settlement." *In re Lucent*, 307 F. Supp. 2d at 647. The best possible recovery, while arguably more than the settlement, is tempered by the risks of further litigation. The settlement provides immediate and substantial benefits for all parties and represents not only a likely recovery amount but also a better option than little or no recovery at all. The reasonableness of the settlement weighs in favor of approval.

In sum, the Court finds that the balance of factors weighs in favor of approval. The Court further finds that the settlement is fair, reasonable, and adequate. As a result, the Court approves the settlement agreement.

## II. Fees & Expenses

       Plaintiff's counsel seek an award of $925,000, which includes expenses of $55,179.05. Defendants have agreed to pay the amount awarded. Plaintiff's counsel may recover fees in a

derivative action and it is within the discretion of the district court to set the amount.  *In re AremisSoft Corp. Securities Litigation*, 2002 WL 1769019, *20 (D.N.J. 2002); *In re Cendant*, 232 F. Supp. 2d at 336-37.  The district court must conduct a full examination of a fee application, even where the parties have consented to the amount, to protect against "any actual abuse or appearance of abuse capable of creating a public misunderstanding."  *Id.* (quotation omitted).  There are two established methods for evaluating the reasonableness of a fee application - the percentage-of-recovery and lodestar.  *Id.*  The former awards a variable percentage of the amount recovered; the latter involves multiplying the number of hours worked by a rate commensurate with the locale, services provided, and attorney's experience.  *Id.*  The district court should cross-check its result under the percentage-of-recovery method with that of the lodestar method.  *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *In re Lucent Technologies, Inc., Securities Litigation*, 327 F. Supp. 2d 426, 458 (D.N.J. 2004).

Under the percentage-of-recovery method, the district should consider: "(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases."  *Gunter*, 223 F.3d at 195 n.1.  The factors "need not be applied in a formulaic way."  *Id.*  "The complexity and duration of the litigation is the first factor a district court can and should consider in awarding fees."  *Id.* at 197.  Applying these factors to the case at hand, the Court makes the following findings:

1)  The complexity and duration of this case are readily apparent.  The claims implicate federal securities law, federal income taxation law, state corporate governance law and have required expert analysis.  Furthermore, the case has been actively litigated for more than three years and remains in the pre-trial stage.  This factor weighs in favor of approval of the fee application.

2)  The benefit to the company and the stockholders amounts to $3,690,000, a factor that weighs in favor of approval.

3)  The stockholders were notified of the fee application and none filed an objection, a factor that weighs in favor of approval.

4)  Plaintiff's counsel has nearly thirty-five years of experience in stockholder derivative and class action litigation.  Defendants are equally well-represented and all attorneys have pursued this litigation and settlement proficiently.  This factor weighs in favor of approval.

5)  There is no apparent risk that Defendants will be unable to pay the settlement amount.  Nonetheless, this factor does not weigh against or in favor of approval.

6)        Plaintiff's counsel have devoted at least 1,931.61 hours in their active pursuit of this litigation and settlement, a factor that weighs in favor of approval.

7)        The fee application seeks approximately twenty-five percent of the settlement amount, a percentage well within the norm. *See In re Cendant Corp., Prides Litigation*, 243 F.3d 722, 736 (3d Cir. 2001) (noting that fee awards range from nineteen to forty-five percent); *In re AremisSoft*, 2002 WL 1769019, *26 (noting fee awards between one-third and one-half of the settlement); *In re Safety Components*, 166 F. Supp. 2d 72, 101 (D.N.J. 2001) (noting recent fee awards ranging between 27.5% and 33.8%). This factor weighs in favor of approval.

In sum, the Court finds that the balance of factors weighs in favor of approval. Cross-checking this with the lodestar method, which is based on a weighted average fee of $485.80 and equals slightly more than $938,300, it appears that the requested fee of $925,000, is actually less than the lodestar amount. The requested fee amount, less the $55,179.05 in documented expenses, is approximately $70,000 less than the lodestar result. The Court finds the fee application is reasonable and appropriate. As a result, the Court approves the application for fees and expenses.

### III. Conclusion

For the reasons expressed above, the settlement agreement is APPROVED and Plaintiff's application for fees and expenses is GRANTED.

SO ORDERED.

s/ Joel A. Pisano<br>
JOEL A. PISANO, U.S.D.J.

Original:     Clerk of the Court  
cc:            All parties  
               Magistrate Judge Arleo  
               File